FRANKLIN INVESTMENT CO., Inc.,
a corporation, Appellant,

v.

Edwin P. HOMBURG, Appellee.

No. 4364.

District of Columbia Court of Appeals.

Argued Nov. 19, 1968.

Decided April 3, 1969.

Bernard D. Lipton, Washington, D. C., for appellant.

James D. Newton, with whom William F. Hickey, Silver Spring, Md., was on the brief, for appellee.

Before HOOD, Chief Judge, and MYERS and FICKLING, Associate Judges.

MYERS, Associate Judge:

In March, 1966, appellant Franklin Investment made a loan to Agar Motors, an automobile dealer, and took as security a chattel mortgage covering, among others, a 1961 Chevrolet, the automobile in question. A financing statement outlining the transaction was duly recorded.

One month later, appellee Homburg bought the car from Agar Motors for cash, which issued a check to Franklin Investment for its release, and received in exchange the title certificate. It bore no indication of the prior encumbrance. The title was reassigned to Homburg who thereafter secured a new title in his own name from the Department of Motor Vehicles of Maryland. Upon receipt of notice that the check from Agar Motors had been dishonored, Franklin Investment caused the automobile to be repossessed from Homburg and then sold.

At trial, evidence disclosed that prior, to repossession, Franklin Investment had notified Agar Motors, but not Homburg, that the car would be repossessed. Homburg's first notice of this action was the absence of his car and the result of his call to the police about its being missing. After its public sale, Franklin Investment applied for and received a transfer of title from the Maryland Department of Motor Vehicles. Despite knowledge of the sale to Homburg and the title he possessed, Franklin Investment in its application for a new title to the car stated that the whereabouts of the certificate of title to the car was unknown and further that the automobile had been repossessed from Agar Motors, although it was fully aware that the car had been in fact repossessed from Homburg.

After finding that Homburg had bought the car in good faith, that he had no notice of a prior lien, and that Franklin Investment had voluntarily surrendered its lien in favor of the proceeds of its sale when it exchanged the certificate of title for Agar Motors' check, the trial judge ruled that Franklin Investment was, by its conduct, estopped from asserting its lien and awarded Homburg $750 for compensatory damages for conversion of the automobile and $2500 for punitive damages.

In its appeal, Franklin Investment contends that the trial judge erred in applying general principles of estoppel rather than the provisions of the Uniform Commercial Code, as adopted in Maryland, An. Code Maryland, 1957, Art. 95B, and that there were insufficient grounds for an award of exemplary damages.

■ Although the determination of the trial judge upon the theory of estoppel was in error since the issues herein are governed by the Uniform Commercial Code, we find no requirement to reverse as the same result was necessarily achieved under the Code. We have had occasion to hold previously that where the judgment of the trial judge is based upon an erroneous theory, but is correct in law, it is our obligation to affirm that judgment. Paton v. District of Columbia, D.C.Mun.App., 180 A.2d 844 (1962); Eastern Aquatics, Inc. v. Washington, D.C.App., 213 A.2d 293 (1965).

Both parties concede the issues of the case are controlled by the provisions of the Uniform Commercial Code, more specifically § 9–307 which reads:

§ 9–307. Protection of buyers of goods.

(1) A buyer in ordinary course of business (subsection (9) of § 1–201) other than a person buying farm products from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.

(2) In the case of consumer goods having an original purchase price not in excess of $500 * * *, a buyer takes free of a security interest even though perfected if he buys without knowledge of the security interest * * * unless prior to the purchase the secured party has filed a financing statement covering such goods.

If § 9–307(2) were applicable to the present case, Franklin Investment would prevail since it would be in the position of a secured party which had filed a financing statement prior to purchase. However, it would first have to establish that the car in question fell within the category of "consumer goods" as defined in the Code.

"Goods" under the Uniform Commercial Code are classified according to use. Under Art. 95B, An.Code Maryland, 1957, § 9–109, goods are

(1) "Consumer goods" if they are used or bought for use primarily for personal, family, or household purposes; * * *

(4) "Inventory" if they are held by a person who holds them for sale * * *.

It is clear that if the car were classified as "inventory," Homburg as purchaser in good faith takes the title clear of any lien of Franklin Investment even though a financing statement was filed.

■ The Code classification of goods, however, is mutually exclusive. Thus, as between the same parties and at the same point in time, a product cannot be classified as both "inventory" and "consumer goods." For our purposes, the manner in which a product is classified is determined at the time of agreement between the parties giving rise to the security interest, and, as to them, the categorization remains unaffect-

ed by a later transfer of the product in question.[1]

■ At the time of the execution of the contract of purchase, the parties to the present action were not the parties to the security agreement which is sought to be enforced. However, it is the contract establishing the security interest which is controlling here. If Franklin Investment had any rights in the car, such rights arise from the security agreement executed with Agar Motors upon which its right to repossess was based. The type of goods covered thereby was "inventory," the car being held by Agar Motors for purpose of resale. As far as Franklin Investment was concerned, this classification was not altered by the subsequent disposition of the car.

Therefore, in this case, as the agreement creating the security interest was between Franklin Investment and Agar Motors, a dealer in used cars, for immediate sale to the buying public in the ordinary course of business, the car in question, under the definition of § 9-109(4), must be considered "inventory." This was the purpose contemplated by the agreement and, as between the dealer and Franklin Investment, the car was "inventory" and remained in that category, irrespective of future transfer or sale of the car. Sales from inventory are covered by § 9-307(1) which protects the buyer from inventory.[2] Homburg was such a buyer and obtained the car free from any security interest of Franklin Investment. Main Investment Company v. Gisolfi, 203 Pa.Super. 244, 199 A.2d 535 (1964); Sterling Acceptance Co. v. Grimes, 194 Pa.Super. 503, 168 A.2d 600 (1961). The Code protects members of the buying public where a mortgage gives possession to the mortgagor to retain posses-

sion and to sell in the regular course of business. After sale, the secured party must look to his security interest in the proceeds from disposition of the original collateral under § 9-306 of the Code.

■ Appellant also questions both the propriety and the amount of punitive damages. Such damages are awarded against a person to punish him for his outrageous conduct. Superior Const. Co. v. Elmo, 204 Md. 1, 102 A.2d 739, 104 A.2d 581, 48 A.L. R.2d 932 (1954). They may properly be awarded "where the act of the defendant is accompanied with fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard of the plaintiff's rights, or other circumstances tending to aggravate the injury." McClung-Logan Equipment Company v. Thomas, 226 Md. 136, 172 A.2d 494, 500 (1961); see also District Motor Co. v. Rodill, D.C.Mun.App., 88 A.2d 489 (1952). Malice, fraud, deceit and wrongful motive may be inferred from the acts of the defendant and circumstantial evidence. Such intent is seldom admitted and need not be proved by direct evidence. McClung-Logan Equipment Company v. Thomas, supra.

■ The award of punitive damages is a matter for the trier of facts.[3] There is ample evidence in the record justifying such an award. Appellant converted appellee's car without notice to him, although it had specific knowledge that the automobile had been purchased by him and that he held title to it. Appellant then proceeded to obtain a new title for the vehicle on the basis of deliberate and materially false representations made to the Maryland Department of Motor Vehicles. In the light of such blatant disregard for the rights of appellee, we cannot say that the

1. 2 Hawkland, A Transactional Guide to the Uniform Commercial Code at 604 (1964); Spivak, Secured Transactions at 44 (1963). Compare the category designations of Weisel v. McBride, 191 Pa. Super. 411, 156 A.2d 613 (1959), and National Shawmut Bank of Boston v. Jones, 108 N.H. 386, 236 A.2d 484 (1967).

2. Art 95B, An.Code Maryland, 1957, § 9-307, Official Comment 2. Main Investment Company v. Gisolfi, 203 Pa.Super. 244, 199 A.2d 535 (1964).

3. United Securities Corporation v. Franklin, D.C.Mun.App., 180 A.2d 505 (1962).

trial judge erred in the imposition of punitive damages upon appellant.[4]

█ Furthermore, the amount of punitive damages awarded was reasonably related to the compensable loss sustained by the appellee. This amount is not so great as to require us to set it aside as being grossly excessive. General Motors Acceptance Corporation v. Froelich, 106 U.S.App.D.C. 357, 273 F.2d 92 (1959).

Affirmed.

4. At trial appellant introduced a letter purporting to show that its actions were based on the advice of legal counsel. However, this letter dealt with legal consultations which occurred after repossession took place. Moreover, there was no proof offered to show that the attorneys consulted had been fully apprised of the existing situation. Clearly this was insufficient to deny appellee an award of punitive damages. Columbia Finance Company v. Worthy, D.C.Mun.App., 141 A.2d 185 (1958).