IN MATTER OF VOLUNTARY ASSIGNMENT OF WATERTOWN TRACTOR & EQUIPMENT COMPANY, INC.: FIRST WISCONSIN NATIONAL BANK OF MILWAUKEE, Appellant, v. FORD MOTOR CREDIT COMPANY, Respondent.

Supreme Court

*No. 77–310. Argued February 6, 1980.—Decided March 4, 1980.*
(Also reported in 289 N.W.2d 288.)

For the appellant there were briefs by *Richard H. Porter, Rodney H. Dow, Richard H. Casper* and *Foley & Lardner* of Milwaukee, and oral argument by *Mr. Dow*.

For the respondent there was a brief by *Rocke A. Calvelli* and *Prosser, Wiedabach & Quale, S.C.,* of Milwaukee, and oral argument by *Mr. Calvelli*.

COFFEY, J. This is an appeal from an order granting priority interest in certain goods and chattels to the Ford Motor Credit Company superior to the appellant, the First Wisconsin National Bank of Milwaukee (First Wisconsin). The subject of this controversy is a disputed lease agreement between the Ford Credit Company, the Watertown Tractor Company and the First Wisconsin National Bank.

The Watertown Tractor Company was a corporation formerly doing business in Watertown, Wisconsin, which primarily sold and leased Ford Motor Company tractors, farm equipment and machinery. In September of 1975, as a result of financial difficulties, the Watertown Tractor Company commenced a voluntary assignment proceeding. Pursuant to the assignment, the Watertown Tractor & Equipment Company, Inc.'s tractors, machinery, equipment and real estate were assigned to a receiver for disposition.

During the pendency of the voluntary assignment proceedings, a dispute arose between Ford and First Wisconsin National Bank over the question of who should gain control and legal interest of the tractors, machinery

and equipment after the termination or expiration of the leases with the third party farmers.[1]

The claim of the First Wisconsin National Bank is based on a $232,000 loan made to the Watertown Tractor Company for tractors, farm equipment and machinery, pledged as security for the loan. As a condition of the loan agreement the Watertown Tractor Company signed a promissory note and executed a general security agreement providing the First Wisconsin National Bank with:

". . . a security interest in all Debtor's equipment, fixtures, accounts, contract rights, chattel paper, instruments, documents, general intangibles and *inventory, whether now owned or hereafter acquired, and all additions and accessions to, and all proceeds and products of, any of the foregoing* ('Collateral')." (Emphasis supplied.)

Pursuant to the Wholesale Plan financing arrangement, the Ford Credit Company gained a security interest in the farm equipment they supplied to the Watertown Tractor Company.[2] At the time the equipment was leased, the Ford Credit Company no longer had a security

[1] At the time of the voluntary assignment proceedings, there were eight lease agreements between Watertown and certain farmers that had not yet terminated (*i.e.*, still in force and effect). However, the priority dispute between Ford and First Wisconsin in this case only concerned the farm machinery and equipment provided for in six of the eight lease agreements. It was undisputed that Ford had a prior security interest in the machinery and equipment of the two remaining leases and thus those two leases are not involved in this appeal.

[2] Wholesale Plan financing is a form of floor plan financing whereby the wholesaler is also a lender, he both supplies and finances the retailer's purchase of inventory for sale and lease. In this case Ford would provide Watertown with a continual supply of inventory and also supply the financing for purchase of the inventory. In return, it received a security interest in all of Watertown's inventory. The security interest is to be released as the goods are sold or disposed of by the dealer—Watertown.

interest in the farming equipment as payment had been received and thus the wholesale financing lien had been satisfied. However, pursuant to the assignment clause in the lease between the farmers and the Watertown Tractor Company, and the lease financing agreement between the Ford Credit Company and the Watertown Tractor Company, the Credit Company purchased the equipment leases from the Watertown Tractor Company and thus obtained a security interest in the leased equipment.[3]

In an attempt to establish the priorities between the Ford Credit Company and the First Wisconsin National Bank, the respective parties entered into a subordination agreement on March 27, 1975.[4] The subordination agreement provided in part as follows:

---

[3] Ford would purchase the leases (*i.e.*, chattel paper) from Watertown at its present value (the original cost of the equipment plus some profit) and in return obtain the right to receive the rental payments over the life of the lease. The lessee would pay the monthly rental directly to Ford pursuant to a provision in the lease agreement providing for direct payment of rent to an assignee of the lease. Watertown, however, continued to possess legal title to the equipment during the leasehold period and it, as lessor, would also reacquire the equipment upon termination of the lease. Since the purchase price of the lease included the original cost of the equipment and Watertown was to reobtain possession of the equipment at the end of the lease, Watertown was required to pay Ford a previously agreed upon "residual value" at the termination of the lease before reacquiring the equipment. The residual value reflected the fact that when the equipment was returned it still had some value. Under the terms of this arrangement, the dealer (Watertown) received all his money at the beginning of the lease, thus providing him with immediate capital and thereby improving his financial situation.

[4] A subordination agreement is an instrument whereby a secured party, entitled to priority under Art. 9 of the Uniform Commercial Code, agrees to subordinate his security interest in collateral to the interest of another secured party, notwithstanding the provisions of Art. 9. *See:* Davenport & Murray, *Secured Transactions*, 113, §3.11(b) (1978).

"1. FMCC [Ford] hereby subordinates its security interests to the security interests of the Watertown Bank and the Milwaukee Bank [First Wisconsin] with respect to all new equipment inventory, used equipment inventory, *rental equipment inventory,* parts inventory and accounts receivable, *whether now owned or hereafter acquired, except only new equipment previously or hereafter sold by the Ford Motor Company, for which FMCC has not been paid, used equipment previously or hereafter traded in to the Dealer [Watertown] as full or partial payment for said new equipment, all parts which become attached to such new and used equipment previously or hereafter sold by the Ford Motor Company, for which FMCC has not been paid, used equipment previously or hereafter traded in to the Dealer [Watertown] as full or partial payment for said new equipment, all parts which become attached to such new and used equipment, and the proceeds of said new equipment.*" (Emphasis supplied.)

Despite the language of the subordination agreement italicized above, the Ford Credit Company contended that its interest in the leased property was superior to that of the First Wisconsin National Bank. Thus, during the pendency of the voluntary assignment proceedings in the Dodge County Circuit Court, the Ford Credit Company filed a motion requesting:

1. an order restraining the court appointed receiver of the Watertown Tractor Company, the First Wisconsin National Bank and the Wisconsin National Bank of Watertown from interfering with their rights to receive the rental proceeds from the leases previously purchased from the Watertown Tractor Company; and

2. an order permitting them, upon the expiration of the rental agreements or upon the termination of such leases, to take possession of the farm equipment identified in the six leases at issue.

Following a hearing on the Ford Credit Company's motion, the trial court ordered that all rental proceeds

arising out of the leases be paid directly to the Ford Credit Company, regardless of the interests of the receiver, the First Wisconsin National Bank or the Watertown National Bank. However, the court temporarily postponed the decision on whether to grant the Ford Credit Company possession of the farm equipment upon expiration of the rental period or an earlier termination of the lease.

Thereafter, the court, in a written decision, ruled that the Ford Credit Company had priority over the First Wisconsin National Bank in the leased farm equipment, in the following language:

"It is conceded by the bank [First Wisconsin] that FMCC [Ford] did acquire by the assignment from debtor [Watertown] a security interest in the equipment leased. The issue is narrowed to the question of whether the security interests of the bank in these chattels is prior to that of FMCC by virtue of a 'Subordination Agreement' signed by the bank and FMCC establishing the relative priorities between the two."

Furthermore, the court stated that it:

". . . finds from the [subordination] agreement itself that the parties intended limited subordination; that this extended to only inventories of the dealer [Watertown], as mentioned, except that part of new equipment for which FMCC [Ford] was not fully paid and trade-ins and proceeds related thereto; that this did not extend beyond inventories and accounts receivable; that the ordinary reading of the agreement gives no hint that chattels under lease and subject to agreements for extension are or are not contemplated by the parties to be a part of inventories nor that the parties contemplated including these in the agreement or excluding them therefrom. Nor does the record show that the parties considered this class of assets and intended such consideration to be included in the agreement."

The court, in its interpretation of the Uniform Commercial Code, sec. 409.109, Stats., ruled that the farm

equipment, once leased to a third party, should no longer be considered as inventory and that the language in the subordination agreement did not provide the First Wisconsin National Bank with priority rights, over the Ford Credit Company, to the equipment described in the six leases.

After the decision, but before entry of an order or judgment, the First Wisconsin National Bank requested that the trial court reconsider its earlier decision. After reconsideration, the court reaffirmed its prior decision and entered an order authorizing the Ford Credit Company to take possession of the equipment identified in the six leases upon default, early termination or expiration of the rental periods. The order also authorized the Ford Credit Company to sell the equipment and use the proceeds to satisfy its full contractual claims, including unpaid rental payments, charges and the termination value payment.

It is from this order that the First Wisconsin National Bank appeals.

*Issues:*

1. Whether farm equipment, initially classified as inventory, remains inventory of the debtor-lessor while on lease to a third party?

2. Whether the trial court erred in ruling that the subordination agreement, between the Ford Credit Company and the First Wisconsin National Bank, failed to cover the farm equipment leased from the Watertown Tractor Company?

The First Wisconsin National Bank contends that the farm machinery and equipment on lease from the Watertown Tractor Company to third parties (farmers) constituted property that should be considered as inventory of the Watertown Tractor Company (the debtor) even while it was on lease. Furthermore, the First Wisconsin National Bank claims that the loan agreement and the

language in the general security agreement with the Watertown Tractor Company, granted them (the First Wisconsin National Bank) a security interest in all of the Watertown Tractor Company's inventory (farming equipment, machinery and tractors, etc.) now owned or acquired hereafter. Thus, the farm equipment and machinery referred to in the leases served as collateral, allowing the bank to acquire a secured interest in the property.

Art. 9 of the Uniform Commercial Code separates collateral into six main categories: (1) goods; (2) accounts; (3) chattel paper; (4) documents; (5) instruments; and (6) general intangibles. *See:* Official Comment, §9–105 Uniform Commercial Code.

Sec. 409.105(1)(f), Stats., defines goods as:

". . . all things which are movable at the time the security interest attaches or which are fixtures (s. 409.-313), but does not include money, documents, instruments, accounts, chattel paper, general intangibles, contract rights and other things in action. 'Goods' also include the unborn young of animals and growing crops."

The First Wisconsin National Bank argues that the equipment and machinery referred to in this case, are properly classified as goods rather than accounts, chattel paper, etc. We agree. It is clear that the statutory language, recited above, includes farm machinery and equipment as property movable at the time that the First Wisconsin National Bank's security interest attached. Secondly, equipment and machinery cannot be properly classified into any of the other remaining five major categories of collateral referred to in Art. 9 of the Uniform Commercial Code. Therefore, we hold that the equipment and machinery (collateral) on the premises of the Watertown Tractor Company, held for lease or sale, qualifies as *goods* under the Uniform Commercial Code. The next issue we must consider is whether the

farming equipment should be considered as *goods* under the Code even when on a lease status.

In a lease situation when the property is leased to a third party the lessor relinquishes physical possession of the property to the lessee, but he nevertheless, retains a legal interest in the property as the holder of legal title. Upon termination of the lease, the lessor, as the holder of the legal interest, is entitled to the return of the property, as a right of reversion.

Recently, in a similar case (the leasing of heavy equipment) *In re Leasing Consultants, Incorporated,* 486 F.2d 367 (2d Cir. 1973) the United States Court of Appeals held that a lessor's "future reversionary interest" in heavy equipment *(goods)* was also an interest in goods:

"Obviously the leased property itself is 'goods.' We conclude, as did the district court, that *the future reversionary interest is likewise an interest in goods, whether it represents 'equipment' or 'inventory' collateral."* (Emphasis supplied.) *Id.* at 372.

Therefore, in light of the United States Court of Appeals' holding in *In re Leasing Consultants, Incorporated, supra,* the Watertown Tractor Company's reversionary interest in the farm machinery and equipment, which we earlier determined to be goods, rather than accounts, chattel paper, etc., under the Uniform Commercial Code, should likewise be classified as an interest in goods.

The Uniform Commercial Code, sec. 409.109, Stats., subdivides goods into four basic types:

"409.109 **Classification of goods; 'consumer goods'; 'equipment'; 'farm products'; 'inventory.'** Goods are: "(1) 'Consumer goods' if they are used or bought for use primarily for personal, family or household purposes; "(2) 'Equipment' if they are used or bought for use primarily in business (including farming or a profes-

sion) or by a debtor who is a non-profit organization or a governmental subdivision or agency or if the goods are not included in the definitions of inventory, farm products or consumer goods;

"(3) 'Farm products' if they are crops or livestock or supplies used or produced in farming operations or if they are products of crops or livestock in their unmanufactured states (such as ginned cotton, wool-clip, maple syrup, milk and eggs), and if they are in the possession of a debtor engaged in raising, fattening, grazing or other farming operations. If goods are farm products they are neither equipment nor inventory;

"(4) 'Inventory' if they are held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them, or if they are raw materials, work in process or materials used or consumed in a business. Inventory of a person is not to be classified as his equipment."

The Official Comment to §9–109 of the Uniform Commercial Code clearly provides that goods held for sale or lease constitute *inventory:*

"When an enterprise is engaged in the business of *leasing a stock of products to users* (for example, the fleet of cars owned by a car rental agency), *that stock is also included within the definition of 'inventory'.*" (Emphasis supplied.) Wis. Stats., Anno., sec. 409.109, p. 170.

Pursuant to the Official Comment of·the Uniform Commercial Code we hold that the Watertown Tractor Company was an "enterprise engaged in the business of leasing a stock [farm machinery and equipment] to users" and, therefore, its equipment and machinery, held for sale or lease, would constitute inventory pursuant to the Uniform Commercial Code.

The Ford Credit Company, in its argument, does not dispute the fact that while the equipment and machinery are located on the lessor's lot or in his showroom, it is

to be considered as inventory, if the transfer of possession through lease has not been accomplished. However, the Ford Credit Company contends that once the product is leased it is no longer inventory because it is off the premises of the lessor and in the physical possession of the farmer and thus no longer in the status of being *held for lease* as required by sec. 409.109.(4), Stats.

In *Franklin Investment Co. v. Homburg*, 252 A.2d 95 (D.C. 1969), the District of Columbia Court of Appeals was faced with the question of whether an automobile should be classified as inventory or consumer goods while on the showroom floor. The court stated that, as a rule, the classification of a product should be made at the time the security interest arises:

". . . the manner in which a product is classified is determined at the time of agreement between the parties giving rise to the security interest. . . ." *Id.* at 97.

In that case the court found that the goods held by the dealer for purposes of resale are to be considered as inventory. However, the court further held that this characterization of the product is not affected by a subsequent transfer of the product:

"The type of goods covered thereby was 'inventory', the car being held by Agar Motors for purpose of resale. As far as Franklin Investment [the creditor] was concerned, this classification was not altered by the subsequent disposition of the car." *Id.* at 98. *See also:* Davenport & Murray, *Secured Transactions*, 43, §2.07 (b) (1978).

Thus, the court held that "as between the dealer and Franklin Investment, the car was 'inventory' and remained in that category irrespective of future transfer or sale of the car."

Other support for this holding can be found in the Practice Commentary to sec. 9–109 of New York's Uni-

form Commercial Code (similar definition of inventory as in Wisconsin)[5] in which the author, Homer Kripke,[6] states that:

"It is unfortunate that the Code was complicated with the concept that goods held for lease are inventory, even when they are not in the prospective lessor's showroom or other place of business. When goods are leased and are in the hands of the lessee, the lessee's interest therein is 'equipment' and it is not clear why it was necessary to assert that *the lessor's interest* therein is *'inventory'* rather than 'equipment' . . . ." (Emphasis supplied.) McKinney's Consolidated Laws of New York, Anno., Book 62½, part 3 at 376.

Thus, Mr. Kripke recognized that the definition of inventory, as contained in the Uniform Commercial Code included the lessor's interest in goods on lease and in the lessee's possession.

It should also be noted that the holding in *Franklin Investment Co. v. Homburg, supra,* that inventory remains inventory even after leased, is consistent with the holding in *In re Leasing Consultants, Incorporated, supra,* that the lessor's reversionary interest in property remains the same (goods) even after the goods them-

---

[5] Sec. 9–109(4) of the New York Uniform Commercial Code reads as follows:

"§9–109. Classification of Goods; 'Consumer Goods'; 'Equipment'; 'Farm Products'; 'Inventory'  Goods are

"(1) . . .

"(2) . . .

"(3) . . .

"(4) 'inventory' if they are held by a person who holds them for sale or lease or to be furnished under contracts of service or if he has so furnished them, or if they are raw materials, work in process or materials used or consumed in a business. Inventory of a person is not to be classified as his equipment."

[6] Homer Kripke was a member of the committee to draft Article 9 of the Uniform Commercial Code and is a member of a subcommittee responsible for consideration of Article 9.

selves are on a lease status. Thus, as to a debtor, once goods are classified by statute as inventory, they remain inventory even while on a lease status, in the possession of the lessee.

Therefore, based on the holding in *Franklin Investment Co. v. Homburg, supra,* and the Practice Commentary to sec. 9–109, of the New York Uniform Commercial Code, we hold that property constituting inventory while on the dealer's showroom floor remains classified as inventory of that dealer even while off the premises, and under the physical control and in the possession of a farmer, but on a lease status. Thus, the farm equipment and machinery in this case, was clearly part of the inventory of the Watertown Tractor Company prior to leasing, and remained inventory of the Watertown Tractor Company even after it was under the physical control of the farmer on a lease status. A similar circumstance is that involving a car lease arrangement interpretation where the legal interest involved is the transfer of a car from a rental agency. No one would argue that the lessor did not have the controlling interest in the cars he owned and leased to third parties even though the vehicle was under the physical control of a third party for a period of time, often in excess of a year.

Next, the First Wisconsin National Bank contends that since the farm equipment and machinery were inventory, it had a priority interest over the Ford Credit Company in the equipment upon termination or expiration of the leases. This contention is based on the subordination agreement entered into between the Ford Credit Company and the First Wisconsin National Bank providing the First Wisconsin National Bank with a priority right to

". . . all new equipment inventory, used equipment inventory, *rental equipment inventory,* parts inventory

and accounts receivable, whether now owned or here-after acquired . . ." (Emphasis supplied.)

except for the equipment the Ford Credit Company previously sold to the dealer (the Watertown Tractor Company) but still carried on the Ford Credit Company's accounts as unpaid.[7]

The First Wisconsin National Bank contends that the *term rental equipment inventory* in the subordination agreement includes the equipment rented or leased by the Watertown Tractor Company to individual farmers. The Ford Credit Company, on the other hand, argues that if the equipment is inventory, then it is "lease equipment inventory" as opposed to rental equipment inventory referred to in the subordination agreement. Moreover, the Ford Credit Company claims that this distinction between lease and rental equipment inventory is based on the length of the lease period. The Ford Credit Company also contends that rental equipment inventory refers only to inventory leased for short periods of time[8] while the term lease equipment inventory should be interpreted as equipment leased for longer periods of time, as the five year rental period in this case.

It is a basic rule of contractual interpretation that:

". . . the language of a contract must be understood to mean what it clearly expresses, and the courts may not depart from the plain meaning of a contract when it is free from ambiguities. *Bousfield v. Hardward Dealers Mutual Fire Insurance Co.*, 24 Wis.2d 10, 14, 127 N.W.2d 765, 768 (1964)." *In Matter of Estate of Alexander*, 75 Wis.2d 168, 181–82, 248 N.W.2d 475 (1977).

---

[7] This exception did not apply in this case because Ford had been previously paid for the equipment.

[8] Ford Credit Company, in its brief, does not define or specify the length or period of time that is involved in a "short term" lease.

Moreover, in *Patti v. Western Machine Co.*, 72 Wis.2d 348, 241 N.W.2d 158 (1976), this court held that:

"The ultimate aim of all contract interpretation is to ascertain the intent of the parties. If this intent can be determined with reasonable certainty from the face of the contract itself, there is no need to resort to extrinsic evidence." *Id.* at 351.

The term *rental* is defined in Webster's *New International Dictionary* 1923 (3rd ed. unabridged (1967)) as ". . . property (as an apartment, automobile, dinner jacket) that is given for use in return for payment." The term rental as commonly used is not limited to short term rentals as the Ford Credit Company claims, but refers generally to property given to another for use in return for money, etc. It would be contrary to the general and accepted usage of the descriptive term *"rental* equipment inventory" for this court to limit application and use of the term "rental" as the Ford Credit Company seeks to accomplish. Moreover, the record demonstrates that the terms "rentals" and "leases" were used interchangeably by the Ford Credit Company itself in its Tractor and Equipment Lease Financing Agreement:

"Definitions

"As used herein:

"a. The term *'Lease Rentals'* means all rentals and other payments paid or to be paid by the Lessee to the Lessor under the provisions of a Tractor and Equipment lease.

"b. The term *'Tractor and Equipment Lease'* means *an agreement* in substance and form satisfactory to FMCC *pursuant to which Dealer, as Lessor, leases* to a Lessee acceptable to FMCC, *agricultural or industrial tractors and equipment.*" (Emphasis supplied.)

The term "Tractor and Equipment Lease" as used in the Ford Credit Company's lease financing agreement did

not mean only long term, *i.e.,* five-year leases, but referred to leases for any agreed period of time. The respondent's interchangeable usage of the terms *rental* and *lease* as used in the lease financing agreement demonstrates that the terms did not have a special or technical meaning, but rather were used in accordance with their common usage. Nor does the subordination agreement itself provide any indication or evidence to demonstrate that the terms were to be used in a limited meaning. In the absence of evidence to the contrary, we hold that the parties intended and understood at the time they entered into the subordination agreement that the term *rental* equipment inventory included all of the inventory of the Watertown Tractor Company (farm equipment, machinery, etc.) which was on lease status with the farmers, without consideration to whether it was in the status of a long or short term lease. For this court to do otherwise would frustrate the clear and unequivocal intentions of the parties.

Therefore, we hold that the First Wisconsin National Bank had a priority interest in the farm machinery and equipment on lease from the Watertown Tractor Company and paramount to the interest of the Ford Credit Company, pursuant to the terms of the subordination agreement. Thus, we hold that the trial court was in error in holding that the Ford Credit Company had a priority interest over the First Wisconsin National Bank.

*By the Court.*—Order reversed and cause remanded for further proceedings consistent with this opinion.