In the Matter of Arch PETTIT and Ida Marie Pettit d/b/a Archangel Corp., La Pettit Roche, Quapaw-Quarters Shops and Ener-Kleen, Debtors.

SEARS, ROEBUCK AND CO., Plaintiff,

v.

Arch PETTIT and Ida Marie Pettit, Defendants.

Bankruptcy No. LR–80–0627.
Adv. No. 80–0417.

United States Bankruptcy Court, E. D. Arkansas, E. D.

Jan. 7, 1981.

Bryon S. Southern, Little Rock, Ark., for plaintiff.

Wright, Lindsey & Jennings, Little Rock, Ark., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT ALLOWING THE CLAIM OF PLAINTIFF AS A SECURED CLAIM

DENNIS J. STEWART, Bankruptcy Judge.

The plaintiff initiated this action as one for reclamation of certain consumer goods in which it has a purchase money security interest. The parties have submitted this action to the court for decision on October 10, 1980, on a stipulation of the material facts as follows:

1. The consumer goods here in issue are the subject of a security agreement wherein the defendant purports to give plaintiff a security interest therein.[1]

2. It would be the uncontradicted testimony of the defendant Arch P. Pettit that all the goods were used at all times in and exclusively for his rental property business.

3. Plaintiff has never filed any documents in any place in order to perfect a security interest under the Uniform Commercial Code.

4. Pertinently, the security agreement executed by the defendant provides that the security interest is given "[i]n consideration of your selling merchandise and services for personal, family or household purposes to me . . ."

The narrow question which is presented to this court for resolution is whether the security interest is to be classified as consumer goods (in which case the purchase money security interest is perfected without the filing of any financing statement under Ark.Stat.Ann. § 85–9–302(1)(d) [Supp. 1979]) or whether it is to be regarded as equipment (in which case filing of a financing statement is required for perfection). From the foregoing facts which have been stipulated, it appears that, in the written security agreement between the parties, the defendant affirmatively and unambiguously represented to the plaintiff that he was purchasing the collateral "for personal, family, or household purposes." There is no stipulation, statement, or showing that the defendant ever informed the plaintiff that the goods purchased would be used for any other purpose.

■ Under these circumstances, considerations of fairness dictate that the security interest be regarded as a purchase money security in consumer goods and therefore perfected without the filing of any financing statement. The stipulated facts clearly demonstrate that the plaintiff had no reason to believe that the purchased merchandise was being used as anything but consumer goods. Under these conditions, the decisions which are clearly apposite hold that it is "inconsistent with [the purposes of the Uniform Commercial Code to simplify, clarify and modernize the law governing commercial transactions] to require a creditor to monitor use of the collateral in order to ascertain its proper classification. The uncertainty caused by the potentially shifting status of the goods is not desirable in the commercial world." *Commercial Credit Equipment Corp. v. Carter*, 83 Wash.2d 136, 516 P.2d 767, 769 (1973). Thus, the majority of decisions on the subject hold the security interest to be perfected without filing of any financing statements.[2]

---

1. The defendants, in their briefing of this action, make no issue of the validity of the security agreement nor of the sufficiency of the description of the collateral therein.

2. These decisions appear to follow Ark.Stat. 85–9–109 which clearly establishes that goods are "consumer goods" "if they are used or *bought for use* primarily for personal, family or household purposes" and "equipment" "if they are used or *bought for use* primarily in business." (Emphasis added.) In the action at bar, by means of the uncontradicted recitations in the agreement, the defendants objectively manifested that they were purchasing the goods for personal use. See *Cessna Finance Corp. v. Pivo*, 58 Cal.App.3d 281, 129 Cal.Rptr. 888, 892 (Cal.App.1976) ("[T]he manner in which a product is classified is determined at the time of the agreement between the parties giving rise to the security interest," quoting *Franklin Inv. Co., Inc. v. Homburg*, 252 A.2d 95, 97 (D.C.Cir.1969); *McGehee v. Exchange Bank & Trust Col*, 23 U.C.C.Rep.Ser. 816, 820 (Tex.Civ. App.1978) ("[T]he [manifested] intent of the debtor-purchaser at the time of the sale when

The cases which have been cited and relied upon by the defendant are inapplicable, for none of them involve an express and unambiguous representation, as in this case, by the debtor that the purpose for which the goods were being purchased was that of personal and household use.[3]

The defendant in this case nevertheless urges that it would be unfair for the court to predicate its decision on the positive and unambiguous representation of household and personal use which the debtor made in the security agreement. Thus, it is argued that:

"The language relied on by Sears is part of a form used in every sale by Sears. A purchaser has no realistic opportunity to dicker with a Sears' sales clerk for better or different terms. The debtors or any other person buying from Sears has no

reasonable alternative but to agree to the terms set forth. If the language in the Sears' form is held to be binding on the debtor, it would operate to produce an unconscionable result, namely, that every sale made by Sears would be a sale of consumer goods regardless of the actual intent of the purchaser or principal use made of the goods. The intent of the drafters of the Uniform Commercial Code to grant perfection only for purchase money security interests in consumer goods would be subverted and Sears would enjoy automatic perfection in every sale. Ark.Stat.Ann. Sec. 85–2–302 provides that if a court as a matter of law finds a contract clause to be unconscionable at the time it was made, the court may limit the application of the unconscionable clause so as to avoid an

[the] security instrument attached is controlling ... [When the debtor-purchaser] represented that the boat was for private purposes only ... [and other facts indicated that he manifested an intention to use the boat for private purposes only]," these manifestations controlled the classification of the collateral.); *Matter of Watertown Tractor & Equipment Co.*, 94 Wis.2d 622, 289 N.W.2d 288, 296 (Wis. 1980) (*In matters of classification of property*, courts should not "frustrate the clear and unequivocal intentions of the parties" as expressed in a controlling agreement.). And cf. *In re Barnes*, 11 U.C.C.Rep.Ser. 670, 672 (D.Me. Bkrtcy. 1972) (When the "vehicle was bought for a personal use" and initially, "[a]t and about the time the security interest attached, the vehicle was actually devoted primarily to personal use," it was held to constitute "consumer goods." "The more appropriate juncture at which to test the actual use to which the collateral is put would seem to be at or as near as may be to the time when the security interest attaches." It is recognized that use of the "actual use" test could only lead to inconsistency of classification when "the primary intended use of the goods at the time of purchase is personal and the actual use to which they are put at or immediately after the security interest attaches is 'in business'." *Id.*, n.3.

**3.** The defendants cite *In re Bonnema*, 4 U.C.C. Rep.Ser. 894 (N.D.Ohio Bkrtcy. 1967), but the principle stated in that case is wholly consistent with that which provides the rationale for decision in the action at bar. In that action, it was held that the security was properly classified as equipment when purchased for use in rental apartments to produce higher rental income. The bankrupt in that case clearly repre-

sented in purchasing the equipment that he intended to use it at the address of his rental property. Similarly, in *United States v. Baptist Golden Age Home*, 226 F.Supp. 892 (W.D.Ark. 1964), the security agreement contained no recitation or representation that the purchased articles would be used for personal use or as consumer goods. In *In re McClain*, 447 F.2d 241, 244 (10th Cir. 1971), it was held that the recitation or "warranty of use" in the security agreement was not, under the Oklahoma law as promulgated in *National Bank of Commerce v. First National Bank and Trust Company of Tulsa*, 446 P.2d 277 (Okl.1968), conclusive, but rather that the court should "look ... to extrinsic facts and ... not give conclusive effect to the warranty in the security agreement." In the action at bar, if that state law is applicable and is to be employed, the plaintiff must still prevail, for there is no stipulation or showing that the defendants in any manner manifested or made known their intention to use the property other than as consumer goods at the time of purchase or thereafter. Finally, in *Sequoia Machinery, Inc. v. Jarrett*, 410 F.2d 1116 (9th Cir. 1969), the court appears to make a determination of the classification solely on the basis of actual use, apart from the manifested intention of the parties. But it recognizes that, if the actual use criterion is to be the sole one, it must be one which the secured party would not find it difficult to discern. ("In many cases it would be difficult to determine whether or not the debtor was a farmer.") And see note 2, *supra*, in which this court has noted that sole emphasis of this criterion may produce inconsistent and unjust results in a case such as that at bar.

unconscionable result. The language in question should be limited.

"The principal use made of the goods purchased was in the Debtors' business of renting houses. The actual intent of the Debtors at the time the security interest was created was to use the goods in that manner and Sears, its agents or employees either knew or should have known of the Debtors' intent. Why else would a person buy four electric ranges within a two-month period?"

In the regard, however, no facts are stipulated from which it might reasonably be inferred that the defendant had no opportunity to inform the plaintiff that the goods were not purchased for the purpose of personal use. In such a case, a different result might be warranted, as it certainly would if there were a stipulation or evidence that the defendant informed, or attempted to inform, the plaintiff that the merchandise purchased was to be used as equipment for his rental property. But all that is before the court in this action is the stipulation of the parties which omits any facts upon which the court could predicate any finding other than that the defendant intended to inform the plaintiff that he intended the purchased goods for personal, family, or household use.

In the face of this unambiguous expression of intention, extrinsic circumstances are not admissible in evidence.[4] And this rule, it seems, is particularly appropriate in the case at bar, in which the plaintiff, when the defendant clearly represented the intended use to be as consumer goods,[5] should not be required to guess from other circumstances that the purchases were really for another purpose.

Accordingly, this court is compelled to find that the security interest of the plaintiff was perfected without the necessity of filing a financing statement and that the claim of Sears, Roebuck and Company must therefore be allowed as a secured claim.

On the basis of the facts before it, however, this court cannot presently grant the plaintiff's complaint for reclamation. For there is no stipulation nor any statement or showing that the debtor is not keeping up his payments on the collateral in accordance with the terms of the security agreements between the parties. Ordinarily, when a debtor is living up to his agreement to pay for property in his possession, reclamation should not be granted. *In re Mulkey of Missouri, Inc.*, 5 B.R. 15, 6 B.C.D. 310 (W.D.Mo.Bkrtcy. Mar. 17, 1980).

It is therefore, for the foregoing reasons,

ORDERED, ADJUDGED, AND DECREED that the claim of the plaintiff herein be, and it is hereby, allowed as a secured claim.[6]

---

4. It is fundamental contract law that "[w]hen the terms of a contract are unambiguous the contract will be enforced or given effect in accordance with its terms, and without resort to extrinsic evidence or construction." *National Starch and Chemical Corp. v. Newman*, 577 S.W.2d 99, 106 (Mo.App.1978), and decisions there cited. But see note 3, *supra*, citing Oklahoma law to the effect that extrinsic circumstances must also be considered. Even if that is so, the stipulation on which this action has been submitted contains no statement or showing of any intention manifested by the debtors except that contained in the security agreement.

5. As is noted in the text of this memorandum, there is no stipulation or evidence that the plaintiff knew or should have known that the goods were not used as household or personal goods.

6. It appears that the parties have not stipulated as to the balance due on the secured claim, nor the value of the collateral. If necessary, these issues can be determined in further subsequent proceedings on appropriate written application or complaint of either party.