**In re Roger Dale HURST and Sandra Jean Hurst, Debtors.**

No. 02–39251.

United States Bankruptcy Court,
S.D. Ohio,
Western Division at Dayton.

April 15, 2004.

Paul H. Spaeth, Dayton, OH, for Chapter 7 Trustee.

James Papakirk, Pratt and Singer Co. LPA, Middletown, OH, for First National First Financial Bank, Successor In Interest To First National Bank Of Southwestern Ohio.

## DECISION ON ORDER FINDING FIRST FINANCIAL BANK DOES NOT HAVE PERFECTED LIENS IN CERTAIN VEHICLES AND THE CHAPTER 7 TRUSTEE HAS SUPERIOR RIGHTS IN THE NET PROCEEDS FROM THE SALE OF CERTAIN VEHICLES

THOMAS F. WALDRON, Chief Judge.

### Background

On December 6, 2002, Roger Dale Hurst and Sandra Jean Hurst dba Hurst Auto Sales (the "Debtors") filed a chapter 7 bankruptcy petition. (Doc. 1) On April 10, 2003, First Financial Bank, Successor In Interest to First National Bank Of Southwest Ohio ("First Financial") filed the Motion of First Financial Bank, Successor In Interest to First National Bank of Southwest Ohio, For Relief From Stay and Co–Debtor Stay And, In The Alternative, For Adequate Protection (Doc. 16) with a No-tice. (Doc. 17) First Financial alleged the Debtors owed it $67,100.00 as of the petition date and wished to exercise its state law rights against vehicles in which it claimed perfected liens.

The appointed chapter 7 Trustee, Paul H. Spaeth (the Trustee), objected that relief from stay was premature until the Trustee could evaluate the validity of the allegedly perfected liens. (Doc. 18) The Trustee objected to any abandonment as well. (Doc. 19) An order continued the hearing scheduled for May 6, 2003 until May 27, 2003. (Doc. 25) The hearing was continued again until July 23, 2003. (Doc. 28) The motion for relief from stay was withdrawn on July 29, 2003. (Doc. 32)

On August 1, 2003, the Trustee filed an Application of Trustee to Employ Robert Bayman and Upper Miami Valley Storage, Inc. DBA Bayman Auctioneers As A Professional Person To Sell Vehicles Combined With Notice And Opportunity To Object (Doc. 35), in which he proposed to sell the vehicles which First Financial claimed were subject to its perfected liens. On August 21, 2003, First Financial Filed an Objection of First Financial Bank, Successor In Interest to First National Bank Of Southwest Ohio, To Motion Of Trustee To Sell Vehicles Free And Clear. (Doc. 37) On September 9, 2003, the court held a telephonic pretrial conference in which the parties agreed that the vehicles would be sold and the Trustee would hold the net proceeds pending further order of the court. (See Doc. 38) On September 22, 2003, the court entered an Order Authorizing Sale of Vehicles Free and Clear of Liens With Liens to Attach To Proceeds of Sale Pending Further Determination Of The Court and Approving Appointment of Auctioneer. (Doc. 39) The Trustee filed a Report of Sale on October 22, 2003 (Doc. 41), which listed $22,785.00 as the net pro-

ceeds of the sale. (Doc. 43—Stipulation 14)

### Positions of the Parties

On January 22, 2004, the court issued an Order Fixing Date For Filing, Memoranda On Legal Issues, And Ordering Other Matters (Doc. 44) Pursuant to that Order, the Trustee filed Trustee's Memorandum In Support Of Position Pursuant To Order Fixing Date For Filing Memoranda On Legal Issues. (Doc. 46) First Financial filed a Memorandum in Support on February 23, 2004 asserting it was properly perfected. (Doc. 49) The Trustee filed a Reply on February 27, 2004. (Doc. 51)

The position of the Trustee is that, pursuant to 11 U.S.C. § 544(a), the Trustee is entitled to the entire net proceeds because First Financial is not a perfected secured creditor. Specifically, the Trustee argues that by failing to file continuation statements or, in the case of the later loans, any financing statements at all, First Financial failed to obtain or maintain its perfected status. First Financial's position is that financing statements are unnecessary to perfect liens in motor vehicles in Ohio and, regardless of the lack of any continuation statements or original financing statements for the secured loans, First Financial is properly perfected and entitled to all net proceeds of the sale to reduce its indebtedness.[1] The trustee argues in his reply brief, this is not true for vehicles held as inventory.

### Agreed Facts

The following statements appear in the parties' Agreed Statement of Facts. (Doc. 43) The "Debtors operated an automobile sales business known as Hurst Auto Sales, located at 525 E. Trenton Street, Trenton,

Ohio prior to the filing of this case." (Doc. 43—Stipulation 2) First Financial "provided financing with respect to the Debtors' automobile sales business including, without limitation, the purchase of motor vehicles held by the Debtors as inventory, i.e. held for sale or lease." (Doc. 43—Stipulation 5) "First Financial alleges that the Debtors are indebted to it in the amount of $67,100.00 based upon promissory notes and security agreements dated September 10, 1997, October 28, 1998, October 28, 1999, and October 26, 2001...." (Doc. 43—Stipulation 6)

"The Debtors executed a Security Agreement in favor of First Financial Bank and dated January 25, 1996. First Financial filed UCC–1 Financing Statements with respect to same ... with respect to all inventory of the Debtor .... No Continuation Statements appear of record ... with respect to the UCC–1 Financing Statements ...." (Doc. 43—Stipulation 7) "First Financial filed UCC–1 Financing Statements ... on or about September 24, 1997 relating to 'unencumbered titled vehicles' and all business inventory." (Doc. 43—Stipulation 9) With respect to the September 24, 1997 UCC–1 financing statements, no continuation statements were ever filed. (Doc. 43—Stipulation 10) "No UCC–1 Financing Statements appear on file ... with respect to the loans of October 28, 1998, October 28, 1999 and October 26, 2001." (Doc. 43—Stipulation 11)

The operative facts establish First Financial provided financing for the Debtors' business which held certain vehicles as inventory. Although First Financial always obtained security agreements in connection with its financing, First Financial

---

1. Although First Financial raises the issue of being secured in its filings, the Trustee has conceded First Financial is properly secured.

The determinative issue is whether First Financial is perfected.

did not always file financing statements and never filed any continuation statements in connection with the Debtors' vehicle inventory.

## Issue

If First Financial does not hold perfected liens, is it entitled to the net proceeds of the vehicles or do the net proceeds belong to the Trustee whose rights as a hypothetical lien creditor under 11 U.S.C. § 544(a)(1) would be superior?

## Summary

The Agreed Statement of Facts (Doc. 43) establishes the only filed financing statements expired, at the latest, on or about September 24, 2002 and no continuation statements were ever filed. This date was prior to the chapter 7 petition filing date, December 6, 2002. First Financial failed to obtain, or maintain, perfection of its secured status and the Trustee's rights as a hypothetical lien creditor under Section 544(a)(1) of the Bankruptcy Code entitle him to the net proceeds of the sale.

## Analysis

11 U.S.C. § 544(a)(1) states that:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

Under the "strong arm" provisions of 11 U.S.C. § 544(a)(1), the Trustee stands in the shoes of a lien creditor whose lien arose as of the petition date. *In Boyd v. NBD Bank (In re Thomas)*, 231 B.R. 8, 11 (Bankr.W.D.Mich.1999); See current Ohio Revised Code § 1309.102(A)(52)(c) (" 'Lien Creditor' means: ... A trustee in bankruptcy from the date of the filing of the petition[.]") and prior Ohio Revised Code § 1309.20(C). Under Ohio law, a lien creditor has priority over an unperfected secured creditor. See current Ohio Revised Code § 1309.317(A)(2) and prior Ohio Revised Code § 1309.20(A)(2); See also *Simon v. Chase Manhattan Bank (In re Zaptocky)*, 250 F.3d 1020 (6th Cir.2001) (discussing 11 U.S.C. § 544(a)(3) and priority under Ohio law)

In order to decide the issue in this proceeding it is necessary to determine how perfection is obtained and maintained with regard to motor vehicles held as inventory. Perfection of a security interest is governed by the Uniform Commercial Code—Article 9. Article 9 in Ohio (and many other jurisdictions) was substantially revised on July 1, 2001. The financing transactions and related documents in this proceeding occurred prior to and subsequent to this July 1, 2001 revision. Accordingly, this decision reviews the perfection issue under prior and current Article 9. The Supreme Court of Ohio has held that "[i]f the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary." *The State ex rel. Savarese v. Buckeye Local Sch. Dist. Bd. of Educ.*, 660 N.E.2d 463, 465, 74 Ohio St.3d 543, 545 (1996) Despite numerous substantive changes, the result in this proceeding is the same under prior or current Article 9 in Ohio.

### First Financial Is Not Perfected Under Prior Article 9

 The transition rules of Revised Article 9, codified in Ohio Revised Code § 1309.705(C), allow properly filed financing statements under prior Article 9 to remain effective until they cease to be effective pursuant to prior Article 9 or until June 30, 2006, *whichever date is earlier.* Under prior Article 9 (with exceptions not relevant to this proceeding), financing statements expired after 5 years. See prior Ohio Revised Code § 1309.40(B)(1) ("... [A] filed financing statement is effective for a period of five years from the date of filing. The effectiveness of a filed financing statement lapses on the expiration of the five-year period unless a continuation statement is filed prior to the lapse.")

Concerning the 1996 and 1997 loans, First Financial never filed any financing statement after September 24, 1997. Pursuant to prior Ohio Revised Code § 1309.40 and the current transition rule, Ohio Revised Code § 1309.705(C), the financing statements for the 1996 and 1997 loans, expired on or about September 24, 2002, before the filing of the chapter 7. See generally *Davis v. Ford Motor Co.*, 469 N.E.2d 1022, 14 Ohio App.3d 39 (Ohio Ct.App.1984) (financing statements expire after five years) Concerning the other loans in 1998, 1999 and 2001, no financing statements were ever filed.

 Perfection of a lien in a motor vehicle was governed by prior Ohio Revised Code 4505.13(A), which stated that:

(A)(1) *Sections 1309.01 to 1309.50 and 1701.66 of the Revised Code do not permit or require the deposit, filing, or other record of a security interest covering a motor vehicle, except as provided in division (A)(2) of this section.*

(2) Sections 1309.01 to 1309.50 of the Revised Code *apply to a security interest in a motor vehicle held as inventory,* as defined in division (D) of section 1309.07 of the Revised Code, for sale by a dealer, as defined in division (J) of section 4517.01 of the Revised Code. The security interest has priority over creditors of the dealer as provided in sections 1309.01 to 1309.50 of the Revised Code without notation of the security interest on a certificate of title or without the retention of a manufacturer's or importer's certificate. (emphasis added)

Thus, under prior Article 9, motor vehicles held as inventory are not perfected on the vehicle certificate of title, but instead by filing the appropriate financing statements. However, First Financial argues that, pursuant to prior Ohio Revised Code § 1309.21(C)(2), it was not required to file a financing statement. That statute stated that:

The filing of a financing statement otherwise required by sections 1309.01 to 1309.50 of the Revised Code is not necessary or effective to perfect a security interest in property subject to:

&ast; &ast; &ast; &ast; &ast; &ast;

The following statutes of this state: sections ... 4505.13 except to the extent as provided in division (A) of such section ....

However, even that prior section supports the Trustee. By referencing Ohio Revised Code § 4505.13, the statute created an "an exception to the exception" for vehicles held as inventory. The general rule is perfection of a security interest requires filing a financing statement. A large exception exists for automobiles which allow security interests to be noted on the certificate of title. However, prior Ohio Revised Code § 4505.13(A)(2) specifically mandated vehicles held as inventory required the secured creditor to follow the

normal rules for perfecting inventory—filing the appropriate financing statements.

### First Financial Is Not Perfected Under Current Article 9

■ As noted, current Article 9 in Ohio still mandates the filing of financing statements to perfect motor vehicles held in inventory. Ohio Revised Code § 1309.515(A) (with exceptions not relevant), states that "a filed financing statement is effective for a period of five years after the date of filing." Ohio Revised Code § 1309.515(C) states that "[t]he effectiveness of a filed financing statement lapses on the expiration period of its effectiveness unless, before the lapse, a continuation statement is filed . . . ."

Excepting some minor changes in the language, current Ohio Revised Code § 4505.13(A) is the same as the prior version

(A)(1) Chapter 1309. and section 1701.66 of the Revised Code do not permit or require the deposit, filing, or other record of a security interest covering a motor vehicle, except as provided in division (A)(2) of this section.

(2) *Chapter 1309. of the Revised Code applies to a security interest in a motor vehicle held as inventory 1309.102* for sale by a dealer. The security interest has priority over creditors of the dealer as provided in Chapter 1309. of the Revised Code without notation of the security interest on a certificate of title, without entry of a notation of the security interest into the automated title processing system if a physical certificate of title for the motor vehicle has not been issued, or without the retention of a manufacturer's or importer's certificate. (emphasis added)

The mandatory requirement to file a financing statement to perfect vehicles held as inventory is further bolstered by Ohio Revised Code § 1309.311(A)(2) and (D), which state that:

(A) *Except as otherwise provided in division (D) of this section, the filing of a financing statement is not necessary or effective to perfect a security interest in property subject to:*

\* \* \* \* \* \*

(2) *Chapters . . . 4505 . . . of the Revised Code* [.]

\* \* \* \* \* \*

(D) During any period in which collateral subject to a statute specified in division (A)(2) of this section is *inventory held for sale or lease by a person or leased by that person* as lessor and that person is in the business of selling goods of that kind, *this section does not apply to a security interest in that collateral created by that person.* (emphasis added)

■ The court notes that First Financial cites a decision, *In re Glass*, 135 F.Supp. 944 (N.D.Ohio 1955). As a 1955 case, it predates the enactment of the prior and current Ohio statutes reviewed in this decision and the enactment of the Bankruptcy Code and would allow "secret liens," which are abhorrent to a significant purpose of Article 9 perfection requirements—to provide notice of a security interest to the world. The court determines *Glass* has no applicability to current Article 9 (or Article 9 as it existed immediately prior to the current version enacted July 1, 2001) and, to the extent applicable, respectfully disagrees with the reasoning and conclusion.

Although there do not appear to be any reported decisions in Ohio on this specific issue, in reported decisions, interpreting statutes similar to the applicable Ohio statutes, other courts have consistently ruled vehicles held as inventory must be perfect-

ed by filing financing statements and, when necessary to continue their perfected status, appropriate continuation statements. See *In re Carcorp, Inc.,* 272 B.R. 365 (Bankr.S.D.Fla.2002); *Simon v. Chrysler Credit Corp. (In re Babaeian Transp. Co.),* 206 B.R. 536 (Bankr.C.D.Cal. 1997); *Draper Bank and Trust Co. v. Lawson,* 675 P.2d 1174 (Utah 1983). See also Elizabeth A. Huber, *Security Interests In Inventory Of Motor Vehicles,* 54 Consumer Fin. I.Q. Rep. 178, 180 (Summer 2000) ("Under old Article 9, a security interest in inventory consisting of motor vehicles is perfected by filing an Article 9 financing statement .... Under revised Article 9, a security interest in inventory consisting of motor vehicles ... is [also] perfected by filing ...."); *Anderson on the Uniform Commercial Code,* Section 9–302:27—Certificate of Title Statutes (June 2003) (accumulating cases); American Jurisprudence, Second Ed., *Secured Transactions,* § 410—Limitations of Motor Vehicle Exception (May 2003) ("[A] secured party who finances an automobile dealer that is in the business of selling and leasing its inventory of automobiles can perfect a security interest in all the automobiles by filing a financing statement, but not by compliance with a local certificate-of-title statute."—Citing Official Comment 4 to U.C.C. § 9–311 (2000 version))

### Conclusion

The status of the Trustee as a hypothetical lien creditor under 11 U.S.C. § 544(a)(1) has priority over the unperfected secured interest of First Financial and the Trustee is entitled to the net proceeds of the sale of the vehicles.

**SO ORDERED.**