**In re Robert O. TROUPE, Dawn Lynn Troupe, Debtors,**

**Lyle R. Nelson, Trustee, Plaintiff,**

v.

**John Deere Credit a/k/a Deere & Company, Defendant.**

Bankruptcy No. 04–20450–WV.
Adversary No. 04–1436–WV.

United States Bankruptcy Court,
W.D. Oklahoma.

March 10, 2006.

Lyle R. Nelson, Esq., Oklahoma City, OK, for Plaintiff.

Richard C. Ogden, Esq., Oklahoma City, OK, for Defendant.

### MEMORANDUM OPINION

T.M. WEAVER, Chief Judge.

Presented by the parties' cross-motions for summary judgment is the issue of whether the debtors' tractor, in which the defendant has a purchase money security interest, is consumer goods under Article 9 of the UCC. If it is, the defendant's security interest is perfected even though the defendant did not file a financing statement. If not, the defendant's security interest is unperfected and subject to avoidance. Because of representations in the security agreement regarding the debtors' intended personal use of the tractor, and for the other reasons herein stated, the court concludes that the tractor is consumer goods and that the defendant has a perfected security interest.

The Chapter 7 Trustee (the "trustee" or "plaintiff") brought this action against the defendant (the "creditor" or "Deere") seeking to avoid Deere's security interest in the tractor pursuant to Sections 544, 549 and 550 of the Bankruptcy Code.[1] The trustee contends that Deere's admitted failure to file a financing statement renders Deere's purchase money security interest unperfected. The trustee asserts that the tractor was used and intended to be used for business, rather than personal, purposes and thus was not consumer goods under Article 9. The defendant maintains that the debtors' primary intended and actual use of the tractor was for personal, family and household purposes and hence was consumer goods. The parties acknowledge that a purchase money security interest in consumer goods is perfected upon attachment, without filing a financing statement. Conversely, they agree that with respect to non consumer goods, the filing of a financing statement is required for perfection of a non-possessory purchase money security interest.

### Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Bankr.P. 7056. On a summary judgment motion, the court is required to pierce the pleadings and evaluate the actual proof to determine whether summary judgment is appropriate. *Id.* at Advisory Committee Notes. Where, as here, the parties file cross-motions for summary judgment, the court is entitled to assume that no evidence needs to be considered other than that filed by the parties. See *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.,* 132 F.3d 1316 (10th Cir.1997) (citing *Harrison Western Corp. v. Gulf Oil Co.,* 662 F.2d 690 (10th Cir.1981)).

### Undisputed Facts

The following material facts are undisputed:

---

1. Unless otherwise specified, all references are to Title 11 of the United States Code (the "Code").

1. On September 24, 2004 (the "petition date"), the debtors filed their voluntary chapter 7 bankruptcy petition.

2. On the petition date, Robert O. Troupe and Dawn Lynn Troupe (the "debtors") owned a 2001 John Deere 4300 MFWD tractor, with loader and blade, (collectively, the "tractor").

3. The debtors purchased the tractor from Deere's dealer on or about July 13, 2001.

4. At the time of the purchase, the debtors lived on a 10 acre tract of land in Colorado.

5. Prior to the purchase of the tractor, the debtors applied for credit with Deere and submitted a credit application dated July 2, 2001.

6. The credit application signed by the debtors stated that the debtor Robert O. Troupe ("Robert") was not self employed but was employed in a management position with an automotive company earning a gross salary of $4,500 per month. The credit application also stated that the debtor Dawn Lynn Troupe ("Dawn") was employed as a professional auto body estimator earning a gross income of $36,000 per year.

7. The debtors each worked at least 60 hours per week at their respective places of employment. Dawn testified on deposition that she worked approximately 75 hours per week at her job as an estimator and two other part time jobs that she held at the same time.

8. Before purchasing the tractor, the debtors told the Deere's dealer's salesman that the debtors wanted to purchase a tractor to be used to fill irrigation ditches on their land. They also stated they wanted the tractor to be small enough to go through the gate of a horse stall. Dawn testified on deposition that she also represented to the salesman that they wanted to use the tractor for moving dirt, hay and snow.

9. Deere financed the debtors' purchase of the tractor. In connection with the financing, the debtors and Deere executed a security agreement by which the debtors granted to Deere a purchase money security interest in the tractor.

10. At the top of the first page of the executed security agreement, there were boxes labeled "Personal" and "Commercial", respectively. An "x" was placed in the box labeled "Personal", while the "Commercial" box was left blank.

11. The security agreement contained the following provision on the first page: "Unless I otherwise certify below, this is a **consumer credit transaction** and the Goods will be used primarily for personal, family or household purposes." (bold type on security agreement).

12. The security agreement also contained on the first page a conspicuous rectangular box running the entire width of the printed page within which appeared the following:

"**COMMERCIAL PURPOSE AFFIDAVIT**. I/We being first duly sworn, affirm and represent to Seller and its assignees that this is a commercial credit transaction, as the Goods listed above will be used by the undersigned in his/her/its business primarily for commercial purposes and will not be used primarily for personal, family or household use."

Buyer's (Debtor's) Signature   Buyer's (Debtor's) Signature

The above signature lines were left blank.

13. The purchase price of the tractor was $16,539.00.

14. At the time of their purchase of the tractor, and for the several years thereaf-

ter, the debtors boarded horses and raised cattle and pigs on their acreage. This activity was done while they were working at their full time jobs.

15. The debtors testified that they intended their farming and ranching activity on their acreage to be profitable financially.

16. On the debtors' tax returns for the years 2001, 2002 and 2003, the debtors took a deduction for depreciation on the tractor. The tax returns reflected that the tractor was used 100 percent for business.

17. The debtors' tax returns for each of the above years showed a substantial loss from ranching.

18. Marketing information on the website of the defendant shows the subject tractor to be in the category of residential equipment.

19. In their affidavits submitted in support of the trustee's motion for summary judgment, the debtors represented that their actual use and intended use of the tractor was for the business purpose of farming and ranching.

20. The debtors' deposition testimony is that the tractor was used 90 percent of the time for personal purposes and 10 percent for business. They considered personal use as being work performed on the homestead as opposed to work done to make a living.

*Conclusions of Law and Discussion*

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157, 1334 and 11 U.S.C. § 544 and 550. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

The trustee brings this action asserting his rights under the "strong arm clause" of § 544(a)(1). Under this provision, the trustee has the rights and powers of a hypothetical lien creditor who held a judicial lien on the property in question at the time of the commencement of the bankruptcy case, whether or not there actually is such a creditor. By exercising these rights, a trustee may avoid liens on property that a lien creditor without notice could avoid. *Id.*

In bankruptcy proceedings, state law governs issues of validity and priority of security interests. *United States v. LMS Holding Company (In re LMS Holding Company)*, 50 F.3d 1526 (10th Cir. 1995); *Trust Corporation v. Patterson (In re Copper King Inn, Inc.)*, 918 F.2d 1404 (9th Cir.1990). The parties do not dispute that Colorado law applies here.[2] Under C.R.S. § 4–9–317(a)(2), the holder of an unperfected security interest is subordinate to the rights of one who became a lien creditor before the security interest was perfected. A lien creditor includes a trustee in bankruptcy. C.R.S. § 4–9–102(52). Thus, Deere must have held a perfected security interest to prevail over the trustee in bankruptcy. It is not disputed that if the tractor is classified as consumer goods under the UCC, Deere held a perfected purchase money security interest despite the fact that a financing statement was not filed. C.R.S. § 4–9–309(1). If the tractor is not consumer goods, however, Deere is not perfected. C.R.S. § 4–9–310.

Consumer goods are "goods that are used or bought for use primarily for personal, family or household purposes." C.R.S. § 4–9–102(23). The other possible classification for the tractor, and the one

---

**2.** The State of Colorado has adopted the Uniform Commercial Code. *See* C.R.S. § 4–1–101 et seq.

supported by the trustee is that of equipment. Equipment is defined as "goods other than inventory, farm products or consumer goods." C.R.S. § 4–9–102(33).

■ The classification of collateral is to be determined as of the time of the creation of the security interest. The classification does not change because of a later change in the manner in which the collateral is used. *Franklin Investment Co. v. Homburg,* 252 A.2d 95 (D.C.1969); *First Wisconsin Nat'l Bank v. Ford Motor Credit Co. (In re Voluntary Assignment of Watertown Tractor & Equipment Co.),* 94 Wis.2d 622, 289 N.W.2d 288 (1980); *Sears, Roebuck & Co. v. Integra Nat'l Bank (In re Fiscante),* 141 B.R. 303 (Bankr.W.D.Pa. 1992). If the law were otherwise, a secured party would be required to continually monitor the use that was being made of the collateral.

■ From reviewing the affidavits of the debtors submitted in support of the trustee's motion for summary judgment, and their deposition testimony, it is not completely clear what oral representations the debtors may have made to Deere's dealer regarding their intended use of the collateral. Robert says he told the salesman that he needed a tractor that was large enough to move dirt to fill irrigation ditches on his land, but small enough to get through a horse stall door. Dawn says she told the salesman they wanted the tractor to do a number of other things on their land in addition to filling the irrigation ditches. Yet nowhere in the debtors' sworn testimony is there any evidence that they told Deere's representative that the tractor was to be used in any type of commercial activity.

The debtors state that they were in the farming and ranching business on their 10 acre tract. They testified that they boarded horses and raised some livestock. Their intention was to make a profit, they said. Their income tax returns reflected that they were involved in ranching, although it was not a profitable endeavor. While the tax returns indicated that the tractor was used 100 percent for business purposes, the debtors' deposition testimony is that 90 percent of the use was personal.[3] Assuming that all of this testimony is true, it nevertheless relates to events subsequent to the attachment of the security agreement. The focus, however, must be on the intended use of the collateral when the security interest was granted.

At the outset, the debtors gave no indication to Deere that they were engaged in a business activity. Their credit application represented that they were both employed, together earning $90,000 per year. Robert represented in the credit application that he was not self employed. They worked long hours at their jobs—Robert 60 hours per week and Dawn about 75 hours per week.

The security agreement that the debtors signed reflected that it was a "Personal" rather than a "Commercial" transaction. The body of the document stated unequivocally that it was a consumer credit transaction and that the tractor was intended to be used for personal, family or household purposes.

■ The case law is clear that where a debtor makes an affirmative representation in loan documents that he or she intends to use goods primarily for personal, family or household purposes, the creditor is protected even if the representation turns out to be erroneous. 1 Barkley Clark, The Law of Secured Transactions under the Uniform Commercial Code ¶ 12–

---

**3.** The debtors attempted to explain that they intended "personal" to mean work done on their homestead as opposed to work done to make a living.

02 [3](rev.ed.2005). (". . . just about every case that has dealt with this issue holds that the dealer . . . can rely on the debtor's written 'consumer representation'"). In *Sears, Roebuck & Co. v. Pettit (In re Pettit)*, 18 B.R. 8 (Bankr.E.D.Ark.1981), the debtor bought goods for use in his rental business. Yet the debtor did not inform the seller of his intended use. The security agreement "affirmatively and unambiguously represented that the debtor was purchasing the collateral for personal, family or household purposes." *Id.* at 9. The bankruptcy court rejected the admission of extrinsic evidence to contradict the unambiguous representation in the security agreement of the debtor's intended use of the collateral. The *Pettit* court held that the seller's purchase money security interest was properly perfected without filing a financing statement, observing that the secured party was not required by the UCC to monitor the debtor's use of the collateral in order to determine its proper classification. In accord is *McGehee v. Exchange Bank & Trust Co.*, 561 S.W.2d 926, 930 (Tex.App.1978) ("the intent of the debtor-purchaser at the time of the sale when . . . [the] security instrument attached to the collateral is controlling, and no creditor is required to monitor the use of the collateral in order to ascertain its proper classification.")

The rationale of *Pettit* is compelling. A debtor who makes representations in a security agreement regarding the intended use of the collateral should be bound by those representations. That is especially true where the debtors fail to inform the creditor that they intend to use the collateral for other than personal, family or household purposes. The classification of the collateral, for purposes of perfection of the security interest, is determined when the security interest attaches. The later use of the collateral for another purpose than as stated in the security agreement is irrelevant in determining whether the security interest is perfected.

According to the security agreement here, the debtors intended to use the tractor as consumer goods. Deere was entitled to rely on the debtors' representation. The debtors did not inform Deere of a different intended use. Therefore, Deere's purchase money security interest was perfected when it attached, and the filing of a financing statement was not required. The security interest remains perfected despite any subsequent use for purposes other than consumer, if indeed there was such other use.

■ The trustee argues that he should not be bound by the debtors' representations in the security agreement because the debtors did not know of the representations. However, one who signs an agreement is bound by its terms, although ignorant of them, absent fraud or false representation. *Elsken v. Network Multi–Family Security Corporation*, 49 F.3d 1470 (10th Cir.1995). As there is no allegation of fraud or false representation regarding the security agreement, this argument is without merit.

For these reasons, the court holds that Deere has a perfected purchase money security interest in the tractor. Accordingly, the defendant's motion for summary judgment is granted, and the plaintiff's motion for summary judgment is denied.

The court will enter a judgment consistent with the foregoing.