In re Joseph M. PALMER and Tracey L. Palmer, Debtors.

Thomas McK. Hazlett, Chapter 7 Trustee, Plaintiff,

v.

Suburban Tractor Company, et al., Defendants.

Bankruptcy No. 05–64120.

Adversary No. 06–2355.

United States Bankruptcy Court, S.D. Ohio,

Eastern Division at Columbus.

March 30, 2007.

D. William Davis, Bridgeport, OH, Chapter 7 Trustee.

Thomas McK. Hazlett, St. Clairsville, OH, pro se.

Suburban Tractor Company, St. Clairsville, OH, pro se.

Joseph C. Winner, McFadden, Winner & Savage, Columbus, OH, for Defendants.

### MEMORANDUM OPINION ON AMENDED MOTION OF DEERE & COMPANY FOR SUMMARY JUDGMENT

JOHN E. HOFFMAN, JR., United States Bankruptcy Judge.

Defendant Deere & Company ("Deere") seeks summary judgment on the avoidance claims asserted against it by the Plaintiff, Thomas McK. Hazlett, Chapter 7 Trustee ("Hazlett" or "Trustee"), in his complaint ("Complaint") (Doc. 1).[1]  Asserting the "strong-arm powers" granted by § 544(a)

---

1. Deere filed its Amended Motion for Summary Judgment ("Motion") (Doc. 14) on November 11, 2006.  Hazlett filed his memorandum in opposition to the Motion ("Response") (Doc. 15) on December 11, 2006 and Deere filed its reply (Doc. 16) on December 18, 2006.

of the Bankruptcy Code, the Trustee seeks to avoid what he claims is an unperfected security interest held by Deere in a compact utility tractor and front loader ("Equipment") owned by the Debtor, Joseph M. Palmer ("Palmer" or "Debtor"). Deere argues that because the Equipment constitutes consumer goods, the filing of a UCC financing statement was not required in order to perfect its purchase-money security interest. Deere maintains that it was entitled to rely on Palmer's representations in the loan documentation that the Equipment would be used primarily for personal, family or household purposes. Because the security interest in the Equipment was properly perfected, Deere argues, it is not subject to avoidance by a creditor holding a judicial lien on the Debtor's property as of the commencement of the bankruptcy case.

For the reasons explained below, the Court concludes that Deere was entitled to rely on Palmer's representation in the loan documents that the Equipment he financed was going to be used for personal rather than commercial purposes. Thus, it was not necessary for Deere to file a financing statement in order to perfect its purchase-money security interest. Because Deere's properly perfected security interest is not subordinate to the rights of a hypothetical lien creditor, it may not be avoided by the Trustee. Deere accordingly is entitled to summary judgment on the claims asserted by the Trustee in his Complaint.

## I. Jurisdiction

The Court has jurisdiction to hear and determine this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. 28 U.S.C. § 157(b)(2).

## II. Factual and Procedural Background

The facts are undisputed. On or about January 12, 2005, Palmer executed a Retail Installment Contract—Lien Contract—Security Agreement ("Contract") (Motion, Ex. A) with Suburban Tractor Company ("Suburban") to finance the purchase of the Equipment. Suburban subsequently assigned the Contract to Deere. Deere is the current holder of the Contract.

The first page of the Contract contains separate boxes listing the Debtor's name and address, his social security number, his telephone number, the county of his residence and the county where he agreed to keep the Equipment. It also contains a box entitled "Type of Business." Within this box the word "Individual" is typed. Also contained in the Contract, within the paragraph entitled "Promise to Pay Installments" is the sentence: "Unless I otherwise certify below, this is a consumer credit transaction and the Goods will be used primarily for personal, family or household purposes." Page Six of the Contract contains a paragraph, set off in a box, that reads: "Commercial Purpose Affidavit: I/We being first duly sworn, affirm and represent to Seller and its assignees that this is a commercial credit transaction, as the Goods listed above will be used by the undersigned in his/her/its business primarily for commercial purposes and will not be used primarily for personal, family, or household use." The signature and date lines within this box are blank.

In support of the Motion, Deere filed the Affidavit of Douglas J. Dunek, Litigation Administrator for Deere, which states that "[t]he Equipment is suitable for personal, family and household uses."

Neither Deere nor Suburban filed a financing statement with the Ohio Secretary of State with respect to the lien claimed on the Equipment.

Palmer and his wife (collectively, "Debtors") filed a joint Chapter 7 bankruptcy petition on August 10, 2005. The Debtors'

Schedule D lists jointly-owned real property located at 69093 Blaine Chermont Road, Bridgeport, Ohio. Their Statement of Financial Affairs ("SFA") states that they operate Palmer Kennels at that address. Debtors' Schedule I reflects that Palmer is employed as a trainer of racing greyhounds for A Ray Kennels in East Palestine, Ohio. The SFA also states that Mr. Palmer has annual income from A Ray Kennels in the approximate amount of $55,000 and that he netted $4,646 from self-employment income in 2005. He reported a loss of $5,000 from self-employment in 2004. The source of the self-employment income is not stated in the SFA, although it presumably comes from the operation of Palmer Kennels. Debtors' Schedule J lists a monthly payment of $184.48 to John Deere Credit as a personal expense; this expenditure is not listed among the business expenses filed with the Court as Doc. No. 6. The list of business expenses does, however, contain an entry for "tractor insurance" at $6.25 per month.

Hazlett applied for authority to retain himself as attorney for the Trustee, and that application was granted. Thus, in this action, he is both Plaintiff and attorney for the Plaintiff. His affidavit filed in support of the Response states that Palmer testified at the § 341 meeting of creditors that:

> he engaged in his occupation as greyhound trainer on his approximately 5 acres of real estate in Bridgeport, Ohio. He testified that he purchased the tractor primarily for use in his training business as it was needed to haul supplies and maintain the kennels on his property. He further testified that at the time of the purchase of this tractor he was not asked the reason for the purchase nor its intended use.

Hazlett Aff. ¶¶ 3–4 (Response, Attachment 1).

## III. Legal Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c), made applicable in this adversary proceeding by Fed. R. Bankr.P. 7056. On motion for summary judgment, the inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anthony v. BTR Auto. Sealing Sys., Inc.,* 339 F.3d 506, 511 (6th Cir.2003); *McKenzie v. Bell-South Telecomms., Inc.,* 219 F.3d 508, 512 (6th Cir.2000). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Leary v. Daeschner,* 349 F.3d 888, 897 (6th Cir.2003); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). Once the moving party satisfies its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Lanier v. Bryant,* 332 F.3d 999, 1003 (6th Cir.2003); *McKenzie,* 219 F.3d at 512. The non-moving party may not meet this burden by resting on mere allegations in the pleadings. *See* Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Mounts v. Grand Trunk W.R.R.,* 198 F.3d 578, 580 (6th Cir.2000). "Merely alleging the existence of a factual dispute is insufficient to defeat a summary judgment motion; rather, there must exist in the record a genuine issue of material fact." *McKen-*

*zie*, 219 F.3d at 512 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A material fact is one that has the "potential to affect the outcome of the suit under applicable law." *FDIC v. Anchor Props.*, 13 F.3d 27, 30 (1st Cir.1994) (internal quotation marks omitted). "[A]s to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Niecko v. Emro Mktg. Co.*, 973 F.2d 1296, 1304 (6th Cir.1992) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

## B.  The Trustee's Avoidance Claims

The Trustee's Complaint (Doc. 1) includes two claims for relief. First, the Trustee seeks avoidance of Deere's lien under 11 U.S.C. § 544(a)(1), asserting that the lien is unperfected and thus subordinate to the rights of a hypothetical judicial lien holder. According to the Trustee, the Equipment constitutes business equipment rather than consumer goods and, thus, Deere was required to file a financing statement with the Secretary of State in order to have a valid and enforceable lien. In his second claim for relief, Hazlett asserts that Deere's security interest, "not being timely perfected, is a preferential transfer pursuant to [11 U.S.C.] § 547 and may be [avoided by] ... the Trustee." Complaint ¶ 12.

Section 544(a)(1) of the Bankruptcy Code states:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists....

11 U.S.C. § 544(a)(1).[2] *See Rogan v. Bank One, Nat'l Ass'n (In re Cook)*, 457 F.3d 561, 564 (6th Cir.2006) ("[Section 544(a)(1) ] grant[s] a bankruptcy trustee the status of a hypothetical lien creditor who is deemed to have perfected his interest as of the date of the filing of the bankruptcy petition[ ]."); *Simon v. Chase Manhattan Bank (In re Zaptocky)*, 250 F.3d 1020, 1023 (6th Cir.2001) ("The 'strong-arm' clause of the Bankruptcy Code, 11 U.S.C. § 544(a), grants a bankruptcy trustee the power to avoid transfers of property that would be avoidable by certain hypothetical parties."); *In re Hurst*, 308 B.R. 298, 301 (Bankr.S.D.Ohio 2004) ("Under the 'strong-arm' provisions of 11 U.S.C. § 544(a)(1), the Trustee stands in the shoes of a lien creditor whose lien arose as of the petition date.").

In determining whether Deere's security interest in the Equipment is subordinate to the interest of a lien creditor without

**2.** Because the Debtor's bankruptcy case was filed before the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), generally effective October 17, 2005, all references to the Bankruptcy Code in this opinion are to the pre-BAPCPA version—11 U.S.C. §§ 101–1330

(2000). *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8, § 1501(b)(1), 119 Stat. 23, 216 (stating that, unless otherwise provided, the amendments do not apply to cases commenced under title 11 before the effective date of BAPCPA).

notice, the Court must look to state law. *See Zaptocky,* 250 F.3d at 1024 (holding that Ohio law determines whether mortgage would be avoidable by a hypothetical bona fide purchaser); *Nelson v. John Deere Credit (In re Troupe),* 340 B.R. 86, 90 (Bankr.W.D.Okla.2006) ("In bankruptcy proceedings, state law governs issues of validity and priority of security interests."); *In re QDS Components, Inc.,* 292 B.R. 313, 321 (Bankr.S.D.Ohio 2002) ("The existence, nature, and extent of a security interest in property is governed by state law." (citing *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979))). Under Ohio Revised Code § 1309.317(A)(2)(a), an unperfected security interest is subordinate to the rights of one who became a lien creditor before the security interest was perfected. The definition of lien creditor set forth in Ohio Revised Code § 1309.102(A)(52) includes a "trustee in bankruptcy from the date of the filing of the petition." Ohio Rev.Code Ann. § 1309.102(A)(52)(c) (LexisNexis 2002). *See Hurst,* 308 B.R. at 301 ("Under Ohio law, a lien creditor has priority over an unperfected secured creditor.").

Under Article 9 of the Uniform Commercial Code ("UCC"), which was adopted by the Ohio legislature and is found in title 13 of the Ohio Revised Code (*see* Ohio Rev.Code Ann. §§ 1309.101–1309.709), the filing of a financing statement is not required in order to perfect a purchase-money security interest in consumer goods. Ohio Revised Code § 1309.310 provides that the filing of a financing statement is not required if, under Ohio Revised Code § 1309.309, the security interest is perfected upon attachment. *See* Ohio Rev.Code Ann. § 1309.310(A) and (B)(2). And Ohio Revised Code further provides that a purchase-money security interest in consumer goods is perfected upon attachment. *See* Ohio Rev.Code Ann. § 1309.310(A) ("The following security interests are perfected when they attach: (A) A purchase money

security interest in consumer goods...."). "Consumer goods" are defined as "goods that are used or bought for use primarily for personal, family, or household purposes." Ohio Rev.Code Ann. § 1309.102(A)(23). Thus, under Ohio law, a purchase-money security interest in consumer goods is perfected upon attachment, *see* Ohio Rev.Code Ann. §§ 1309.309(A) and 1309.310(B)(2), and attachment occurs upon execution of the security agreement, *see* Ohio Rev.Code Ann. § 1309.203.

Relying on the foregoing provisions of the Ohio Revised Code, Deere maintains that its "security interest [in the Equipment] attached when the Debtor signed the Contract. Because the [c]ontract specifies the Equipment would be used for personal, family or household purposes, Deere's security interest was perfected when the Debtor purchased the Equipment, and the filing of a financing statement was not necessary." Motion at 4 (citing Ohio Rev.Code Ann. §§ 1309.102(A)(23), 1309.203). According to Deere, because its security interest in the Equipment was properly perfected, it is not subordinate to the Trustee's rights as a hypothetical lien creditor, and thus not subject to avoidance. *See id.* at 5 ("Deere is entitled to summary judgment because it has a perfected security interest against the Equipment that is superior to the Trustee's claim as a hypothetical lien creditor.").

Hazlett asserts that summary judgment is not appropriate because Deere "has presented no evidence as to the actual nature of the transaction" and has failed to demonstrate that it "was actually a consumer transaction." Response at 6. Hazlett also posits two hypothetical situations that he suggests demonstrate that the financing arrangement in question must be classified as a commercial transaction, thus requiring the filing of a financing statement by

Deere in order to perfect its security interest. First, he states that the transaction may have been commercial in nature but that the Debtor was unaware of the distinction between commercial and consumer transactions and thus failed through inadvertence to fill out the "Commercial Purpose Affidavit" box on page six of the Contract. *Id.* The second possibility is that Deere and the Debtor colluded to mischaracterize the transaction as a consumer transaction. According to the Trustee, this would benefit Deere because it would "avoid[ ] the expense of preparing and filing a financing statement with the Secretary of State," and would also benefit the Debtor, who would have "a different default rate on a consumer transaction and ha[ve] an easier time reselling the property as it is not encumbered by any of those inconvenient filed liens." *Id.* Hazlett further argues that policy reasons require the Court to find the lien unperfected because, otherwise, a future purchaser of the Debtor's kennel business could observe the Equipment being used on the property and mistakenly believe it to be unencumbered business equipment due to Deere's failure to file a financing statement with the Secretary of State. *Id.* at 5.

■ The Trustee's arguments are meritless. As the bankruptcy court explained in *Troupe,* "[t]he classification of collateral is to be determined as of the time of the creation of the security interest. The classification does not change because of a later change in the manner in which the collateral is used." 340 B.R. at 91. *See also First Wisconsin Nat'l Bank v. Ford Motor Credit Co. (In re Voluntary Assignment of Watertown Tractor & Equip. Co.),* 94 Wis.2d 622, 289 N.W.2d 288, 293 (1980) ("[A]s a rule, the classification of a product should be made at the time the security interest arises...."); *Franklin Inv. Co. v. Homburg,* 252 A.2d 95, 97 (D.C.1969) ("[T]he manner in which a product is classified is determined at the time of agreement between the parties giving rise to the security interest....").

■ The Contract under which Deere was granted a security interest in the Equipment plainly states that the Debtor is borrowing as an individual. The Contract characterizes the agreement as a consumer credit transaction, and it states that the goods financed will be used for personal, family or household use. The Commercial Purpose Affidavit is blank and unsigned. As the bankruptcy court noted in *Troupe,* "[t]he case law is clear that where a debtor makes an affirmative representation in loan documents that he or she intends to use goods primarily for personal, family or household purposes, the creditor is protected even if the representation turns out to be erroneous." 340 B.R. at 91. *See Sears, Roebuck & Co. v. Pettit (In re Pettit),* 18 B.R. 8, 9 (Bankr. E.D.Ark.1981) (holding that seller's purchase-money security interest was properly perfected without the filing of a financing statement based upon the security agreement's "affirmative[ ] and unambiguous[ ] represent[ation] ... that [the debtor] was purchasing the collateral for 'personal, family or household purposes'"); *McGehee v. Exchange Bank & Trust Co.,* 561 S.W.2d 926, 930 (Tex.App.1978) ("[T]he intent of the debtor-purchaser at the time of the sale when ... [the] [b]ank's security instrument attached to the collateral is controlling, and no creditor is required to monitor the use of collateral in order to ascertain its proper classification."); 1 Barley Clark & Barbara Clark, *The Law of Secured Transactions Under the Uniform Commercial Code* ¶ 12.02[3] at 12–20 (rev. ed.2006) ("[J]ust about every case that has dealt with the issue holds that the dealer (and its assignee) can rely on the debtor's written 'consumer' representation.").

Here, the Debtor made an affirmative representation that the goods were for

personal, family or household use. There is no evidence in the summary judgment record that this representation was false or erroneous in any way, or that the Debtor did not understand what he was signing. And Hazlett's collusion theory to the contrary notwithstanding, there is not a shred of evidence to support the existence of an agreement between Deere and the Debtor to falsely characterize the transaction. In *Pettit*, which involved a similar fact pattern, the debtor purchased goods for his rental business, but signed a statement saying that the goods were to be used for personal, family or household purposes and did not tell the seller otherwise. The bankruptcy court held that the seller's security interest was a purchase-money security interest in consumer goods, which was perfected without the necessity of the seller filing a financing statement. According to the *Pettit* court, the transaction involved an "express and unambiguous representation ... by the debtor that the purpose for which the goods were being purchased was that of personal and household use." 18 B.R. at 10. The court noted that "a different result might be warranted, as it certainly would if there were a stipulation or evidence that the defendant informed, or attempted to inform, the plaintiff that the merchandise purchased was to be used as equipment for his rental property." *Id.* at 11. As in *Pettit*, there is no evidence here that Palmer informed, or attempted to inform, Deere that the Equipment would be used for business purposes.

Although not cited by the Trustee, the Court's independent research has revealed two reported decisions in which bankruptcy courts have placed the burden of inquiry on the creditor to determine the intended use of the liened goods. In *Sears, Roebuck & Co. v. Integra Nat'l Bank (In re Fiscante)*, 141 B.R. 303 (Bankr.W.D.Pa. 1992) and *In re Pipes*, 116 B.R. 154 (Bankr.W.D.Mo.1990), the courts ruled that when a creditor fails to make an inquiry and instead assumes what the use of the product will be, it does so at its own risk. Both *Fiscante* and *Pipes*, however, are factually inapposite. *Fiscante* involved a situation where the creditor—by its own admission—was told by the debtor at the time he purchased a lawn tractor that it would be used in his fledgling business, and the debtor actually sought to finance the tractor in the business's name. *See Fiscante*, 141 B.R. at 305 ("[A]t the time the lawn tractor was purchased, the Debtor told Sears what the lawn tractor was for. Sears took it upon themselves to classify the transaction as personal, although it knew or should have known it was for business.... The fact that Sears required the Debtor to use his personal charge card for the transaction and decided to classify the loan application as personal does not 'make' business equipment become consumer goods."). And in *Pipes*, the bankruptcy court held that the secured creditor either knew at the time the transaction occurred that the property was to be used in the debtor's business, or should have known by virtue of the type of property being financed. *See Pipes*, 116 B.R. at 156 (debtors financed "extensive and expensive hand tools [valued at $5,000] [that were] used in the debtors' business of repairing motor vehicles"). By contrast, the Equipment financed by Palmer in this case—a compact tractor and front loader—constitutes personal property that could be used for personal, family or household purposes, particularly by the owner of a five-acre tract of land. Such a transaction would certainly not be so inherently unusual as to put a creditor on notice that the property it financed was to be used for business purposes.

The only evidence offered by the Trustee in support of his Response is his own affidavit recounting his recollection of Palmer's testimony at the meeting of creditors. Hazlett's affidavit testimony fails to demonstrate the existence of a genuine

issue of material fact for several reasons. First, it constitutes inadmissible hearsay. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 620 (6th Cir.2003) (holding that a court "may not consider hearsay on a motion for summary judgment"); *Williams v. York Int'l Corp.*, 63 Fed.Appx. 808, 814 (6th Cir.2003) (unpublished) ("Hearsay is inadmissible in affidavits submitted in conjunction with, or in opposition to, motions for summary judgment." (citing *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir.1994))). Second, Hazlett has not shown that any of the exceptions listed in the Ohio Code of Professional Responsibility, Disciplinary Rule 5–101(B)(1) through (4), which permit a lawyer to be a witness for his client under certain limited circumstances, apply in this case.[3] Thus, Hazlett's affidavit testimony is subject to exclusion as hearsay, and also based on the general ethical proscription against an attorney simultaneously serving as counsel and testifying as a witness in the same proceeding. The Trustee could have avoided this evidentiary problem by obtaining affidavit or deposition testimony as to the substance of any conversations between the Debtor and representatives of Suburban or Deere concerning the proposed use of the Equipment (either from Palmer or representatives of Suburban/Deere). By instead offering affidavit testimony consisting of inadmissible hearsay, the Trustee has failed to meet his burden—as the non-moving party—to come forward with specific facts showing that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.[4]

In sum, Deere has met its burden of establishing that its financing arrangement

---

3. DR 5–101(B) provides:

(B) A lawyer shall not accept employment in contemplated or pending litigation if the lawyer knows or it is obvious that the lawyer or a lawyer in the firm ought to be called as a witness, except that the lawyer may undertake the employment and the lawyer or a lawyer in the firm may testify:

(1) If the testimony will relate solely to an uncontested matter.

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or the firm to the client.

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or the firm as counsel in the particular case.

On August 1, 2006, the Ohio Supreme Court adopted the American Bar Association Model Rules of Professional Conduct, which, effective February 1, 2007, replaced the Code of Professional Responsibility. Rule 3.7 of the Ohio Rules of Professional Conduct, entitled "Lawyer as Witness," states:

(a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless one or more of the following applies:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case;

(3) the disqualification of the lawyer would work *substantial* hardship on the client.

4. In its Reply, Deere asserted that Hazlett's affidavit "[fell] well short of creating a genuine issue of fact," pointing out that the "testimony attributed to the Debtor is hearsay." Reply at 3. To attempt to cure this evidentiary deficiency, the Trustee later filed his own motion for summary judgment, which is accompanied by the Affidavit of Tracey L. Palmer ("Palmer Affidavit")—who was not a party to the Contract—in which she states: "The Tractor was purchased in connection with our boarding kennel known as Palmer Kennels operated at our residence. During the course of our discussion with Suburban Tractor the sales person was advised of the intended use of the equipment." Palmer Affidavit ¶¶ 3–4, (attached as an unmarked exhibit to Plaintiff's Motion for Summary Judgement, (Doc. 17)). However, the Trustee's summary judgment motion was filed on February 16, 2007, nearly three months after the November 20, 2006 deadline for filing dispositive mo-

with the Debtor was a consumer transaction. Hazlett, as the non-moving party, failed to come forward with specific facts showing that there is a genuine issue for trial. His conjecture—which is utterly devoid of evidentiary support—that the Debtor either failed to appreciate the distinction between a consumer and commercial transaction, or colluded with Deere to mischaracterize the transaction, simply does not establish the existence of a genuine issue of material fact. Deere accordingly is entitled to summary judgment on the Trustee's § 544(a)(1) avoidance claim.

The Court's determination that Deere's security interest in the Equipment was properly perfected also disposes of the Trustee's preference claim, which was pleaded in the most cursory fashion.[5] The Contract was executed on January 12, 2005 and the lien attached that day. The Debtors filed their petition on August 10, 2005, well outside the 90–day look-back period for avoidance of a preferential transfer under 11 U.S.C. § 547(b)(4)(A). Thus, Deere also is entitled to summary judgment on the Trustee's preference claim.

## IV. Conclusion

For the foregoing reasons, the Motion is **GRANTED.** A separate judgment entry dismissing the Complaint will be entered.

**IT IS SO ORDERED.**

---

tions established by the Court's Pretrial Scheduling Order Following Pretrial Conference (Doc. 11), which was entered on August 23, 2006. Accordingly, by separate order, Deere's request that the Trustee's summary judgment motion be stricken as untimely—made by way of its memorandum contra to the Trustee's summary judgment motion (Doc. 18) filed on March 8, 2007—has been granted. *See* Order Striking Motion for Summary Judgement As Untimely (Doc. 20).

**5.** The Complaint fails to set forth each of the elements of a preferential transfer enumerated in 11 U.S.C. § 547(b). Rather, the Trustee simply alleges—in a conclusory manner—that Deere's "lien, if any, not being timely perfected, is a preferential transfer pursuant to § 547 and may be awarded to the Trustee." Complaint ¶ 12.